Motorola Mobility LLC v. Intellectual Ventures I LLC And Your Honor, I see I'm in my rebuttal time. I do want to answer your question with just one other point. This issue as to whether or not there would be backoff applied, even if you look at the board's findings and Dr. Tufek's statement, he agreed that sometimes you would receive backoff to the lower priority packet. So there's no dispute about that. And that's where we say this court's anticipation law results in a legal error here. They came in and said, oh, well, this is just a possibility. But in this embodiment, in the buffer management embodiment where it sends the low priority packet to step 640 and says, oh, and a high priority packet is going to jump it, even if that 640 gets a backoff, that's an anticipation. That is the scenario that the packet might describe. I guess what I keep thinking is that everything in 640 is a packet just taking figure 6 for which there has been a prior attempt. But that is absolutely not the case, given the buffer management statement. Which is about 640, referring to figure 6, which all starts with 640. Correct. And I would point out that there is a distinction between how IAGARI characterizes an attempt to transmit. They view if the channel is busy and you get a backoff just because the channel is busy, that's an attempt to transmit. They view that as a failed transmission. IAGARI does. The 392 patent does not. They view if there is an attempt to transmit and you can't because the channel is busy, that's not a failed transmission attempt. Only an externally collided packet is a failed transmission attempt. Can I ask you one more question before you go? If I understand the claim to require that as a consequence of an internal collision, the losing message goes to backoff state, then why is it that IAGARI's figure 6 teaches that if I read that what's really the event that causes the backoff state is when a message is ready to launch, but it fails to transmit? I'm not sure I understand the point. I guess my understanding right now of box 640 is that the losing message doesn't immediately go to backoff state. The losing message eventually has to reach box 600 to check whether the channel is available for transmission. And only if that once losing message, now winning message, learns that the channel is not available to transmit will that once upon a time losing message go into backoff state. So there's an intervening event that causes the backoff state, not the internal collision that occurred in box 640. And that's, Your Honor, where I think I would explain it as this. The intervening event that creates the backoff is the statement where IAGARI says the high priority packet supersedes, because you know the low priority packet was waiting for the next transmission opportunity. High priority packet gets that. The only way IAGARI's statement, even if backoff can be applied to the low priority packet, can be true is because the high priority packet jumps the line. It gets the transmission opportunity. The low priority packet goes to the no route, to step 615. And even in their own brief, IV concedes the only way that that packet could get a backoff is to get to step 615. So the intervening event is the superseding high priority packet. Thank you, Your Honor. OK. Any more questions at this moment? Thank you. We'll save you a little time. Thank you. Mr. Babcock. Good morning, Your Honors. So I wanted to talk about figure 6, because I think the panel fortunately understands figure 6 better than I did when I first got this case. Let's not forget, though, that this is a substantial evidence case. This is a case in which the board examined the evidence, examined what IAGARI teaches, examined the expert declarations from both parties, looked at the patent, and determined, based upon all of the evidence, that IAGARI does not meet this limitation. So this isn't a de novo review by this panel. This is a determination of whether or not there was substantial evidence supporting the board's determination that IAGARI does not disclose this. Is there some fanciful way to read IAGARI as it might? Possibly. And Motorola has an argument, but that's not the standard here. And in fact, I want to discuss why this new argument on appeal that's path 1, path 2, this wasn't presented below. But I think if we understand figure 6, the questions are all resolved. I like the skating rink analogy. And I think where we have to decide is, and we have to understand, where do the packets initially come from? This figure 6 is all about external collisions. This has nothing to do with internal preemption. And the IAGARI patent does say where the packets come from initially. So you have these cues. And in my notes, off of this figure, I have cues. Cues lined up with packets. And as was discussed prior, those cues have a priority scheme. And the priority scheme is very simple. Higher priority package is go, lower priority package is wait. Julius, I mean, it's your view that IAGARI just really doesn't talk about internal collision? Not at all. It uses standard protocols for priority schemes. It doesn't do back off with respect to internal preemption. It has internal cues. And it has a priority scheme. Priority scheme is higher priority messages go out. Where do they go? It says in column 12, starting with line 23, after the allocation of QoS, transmission of a packet in accordance with the invention includes collision avoidance using stochastic scheme described in figure 6. So what happens? You have these internal cues outside of figure 6 determining which packet gets to go onto the ice, using Judge Toronto's analogy. I'm sorry I interrupted. No, it's a good analogy. The highway is enough. Highway. Goes onto the highway. So you have one message that the priority scheme within the cues picks. It comes out, and it comes into the top of 600. It's not shown here, but that's what happens. In my diagram, I have a pipe running through there. It's the highway. I think of it as a channel. That channel now defines external. Everything that happens now is the system looks externally at the channel to say, is it busy or not? We're no longer talking about internal preemption. We're talking about external collision avoidance. And what happens? Well, you have two paths. If you come out, and you see the channel appears to be free, you send the message. And if it goes through, and you get acknowledgment back, you're done. That takes you all the way down to end after 610. But if you send the message out, you don't get acknowledgment back. Then you go over, and you get this magical back-off treatment. But that's after an unsuccessful attempt. What's the other path? Well, the other path is also an unsuccessful attempt. But there, you listen to the channel. The channel says, busy. So the system says, well, we know if we send it now, it's going to collide. So we're going to go ahead and send it now down this path to 615, which is where we get back-off treatment. Both of those paths are unsuccessful transmission attempts. It says, I already said, register a failure. If you decide not to send, you don't even attempt. Doesn't the other side make an argument that merely sensing the medium for whether or not it's available or unavailable, sensing the channel, whether it's available or unavailable, isn't really a transmission attempt? Well, they say that. But that's consistent with their specification. The specification seems to make a distinction between sensing the medium versus a failed transmission. No, the specification makes three things. Our specification, 392 patent, says sensing the medium. But this claim doesn't, the patent actually talks about actual collisions. So there's actual collisions, which is when you just send it out and it bounces back. But this claim doesn't talk, even though it says the claim has language talking about actual collisions. This limitation we're talking about here just says an unsuccessful transmission attempt, a broader use of the term. In fact, let me read you, you'll be able to get claim three in the patent. Three talks about collides, four doesn't. Right. So the board reasonably understood that colliding is something more narrow or narrower than simply unsuccessful attempt. They looked at, specifically at the prior art, they looked at the testimony of the experts. Dr. Tewfiq said, sensing the transmission, sensing the channel, determining it's busy, and not sending is an unsuccessful transmission attempt. And that's exactly what IAGARI says. IAGARI says, register a failure. And if you read IAGARI, what are you pointing to? So I'm looking at IAGARI appendix 1138. So column in line of IAGARI, column 12, line 51. During step 615, the node enters a back off state, registers a failure, and generates a time delay after currently busy channel becomes free before attempting transmission of the current packet. The time delay is a function of the priority level of the packet and the number of failed transmission attempts. Failed transmission attempts. So was it unreasonable for the board to say that if you get to 615 along either path, it's an unsuccessful transmission attempt when the prior art calls it a failed transmission attempt? And same column, line 12, line 65 talks about the number of failed transmission attempts. So both of these paths are unsuccessful transmission attempts. The one on the left is an actual collision. The one on the right is like a pseudo collision because the system says, hey, the channel's busy. Therefore, we're not going to send. But both paths result in back off treatment because of an unsuccessful transmission attempt. And as the panel recognizes, the claim talks about receiving back off treatment not as a consequence of an unsuccessful transmission attempt, but back in the queues. Back in the queues when the priority is determined and one packet is superseded over the other, instead of that second packet just waiting, that second packet is given back off treatment back in the queues. That's the as if language. As if it had already gone through this system and had an unsuccessful transmission attempt and had gotten back off treatment back in the queues, it never has. It's just coming up to the queues and it gets superseded. Now what about this even if language that the board, that Motorola relies upon? From Iagari. From Iagari. The point that Iagari is making is that if you have two packets in the queues and you supersede the second one, the system doesn't care whether by holding it back, it might end up that it goes out and it ends up colliding and getting back off treatment. Now if it went out first, if the priority system said, hey, let's give this guy first treatment and it goes out, it might go through. So what Iagari says is we're going to hold the second one even if by holding it, it means that when it goes out, comes into 600, the channel might be busy, and then it's going to go through the system, get to 615, and get back off treatment. But nowhere does Iagari say we're going to hold it, and by holding it in the queues, we're giving it back off treatment. Does that give due account to the term another back off? That particular sentence actually is even better for us because it's talking about what happens in 640. And as the court has recognized, 640 packets have already been through the system. So if you're down in 640, you've already come through this, which means you definitely already have gotten back off treatment before. You've come through this external collision system. So that sentence really has nothing to do with the queuing priority scheme, which is separate, which Iagari never teaches has anything to do with back off treatment. So all Iagari is saying is if you hold a packet or if you give a packet priority, the held packet might end up, in figure six, getting back off treatment. We don't care. But nowhere does Iagari ever teach that back in the queues, back in the priority scheme, back in determining which packet goes up to 600. That packet gets back off treatment. Doesn't happen. Back off treatment only happens here in this patent at 615 as a function of an unsuccessful transmission attempt, looking at the channel, having looked at the channel, either having an actual collision or a pseudo collision based upon a busy channel. So with that understanding of figure six, I think all of the board's discussion makes perfect sense. Including where Mr. Stockwell began with, I guess, the three propositions or findings by the board. And I guess I want to focus on the second one he mentioned, which is at page 29. We agree with Petitioner that both Iagari references, so including the only one that is being discussed in this appeal, specifically contemplate and disclose the scenario in which two queues have data that is ready to be transmitted at the same time. Is that, you read that as limited to the 640 situation? Well, we don't agree that Iagari actually talks about two queues being ready to transmit at the same time. Yeah, but the fact that you don't agree doesn't diminish the quality. I understand, I understand. It was a finding. It's a finding. And the finding doesn't give us a different conclusion. The point is that if you have two packets ready to go at the same time, the only way in Iagari you're going to get back off treatment is if you go through figure six, you check the channel for transmission for availability, and then you either collide, or you find it's busy, and you don't collide. There's nothing in that sentence that says that the priority scheme within the queues gives you back off treatment. It's only as a consequence of this subsequent event. The reason that the board said it's a possibility, this doesn't mean there's multiple embodiments. The board said it's a possibility because the message that's being superseded or being held back, when it finally gets to go out to 600, it may be successful. The channel may be open, and it may go right out. It may not be successful. And if it's not successful, then it gets back off treatment as a consequence of an actual unsuccessful transmission attempt, not as a consequence of having being superseded or held back in the queues. So that's what the even if language means. It just means, and then the board says, the decision in the queues to decide which message to send is done without regard to what might happen later, without regard to whether or not holding that second message, superseding it, might result in it getting out onto the highway and having a collision. The IAGARI priority scheme says nothing about concern about giving any internal preemption to that superseded packet. OK. Let's see. Mr. Babcock, you've separated your cross-appeal. Have you covered what needs to be covered, at least at the moment? I have three points on the cross-appeal. I'll hit that when I come back. Is that OK? Oh, OK. Very good. All right. That makes sense. I think I've covered all of them. I don't know what you mean when you come back. Well, Mr. Babcock has asked for three minutes of rebuttal of the cross-appeal. Right. Keep the issues straight. All right. Take two minutes and tell us. Why don't I take the time I have now and do it now, so I don't violate the procedural rules? Well, if there's nothing to rebut, then that takes care of the extra time. That'd be fine. That'd be fine, Your Honor. OK. So with regards to Claim 9, I think there's three points I'd like to make on our cross-appeal. The first is I think our briefs do a pretty good job of showing that the limitation and issue here, I'll read it. It says, sensing the communication medium for an opportunity to transmit the message data units from each of the first and second output queues. In IAGARI, the channel checker, Box 600, only checks for the queue that's sending out the message. There's no sensing of multiple queues. The priority system determines which message goes out. It determines which queue the message is coming from. The channel checker checks for that single queue. Now, the first point, I think our briefs show the comparison between what the claims say and what the board said. The claims say you check the communication medium for each of the first and second queues. The board said the transceiver senses the communication medium for an opportunity to transmit data units regardless of where they originate. And we told the board, no, it's not regardless. It's not just sensing. Of course, IAGARI senses the communication medium. But what was clever and novel about the patent is that you're actually going to be sensing for at least two queues. IAGARI doesn't teach that. But first of all, the board read that out of the claim. The board clearly said, we don't care about whether it's sensing for two queues or not. We're just going to say it senses, that's good enough. So that's a legal error. Second point is, the board has two anticipation holdings. Now we get substantial evidence. Well, the first anticipation holding is based upon the incorrect legal analysis. By reading out from each of first and second output queues, the board then says, well, IAGARI teaches that. Well, that's incorrect because the claim construction was wrong. The board read out the claims, read out the claim limitation. It has to be given meaning. My third point. The board does have a half a paragraph of an alternative holding. Motorola says, hey, substantial evidence. The board looked at it, said, hey, this limitation is met. All the board says there, well, first of all, there's no evidence from Motorola at all at this point. Motorola presented no evidence on how for each of the first and second output queues is satisfied. There's no evidence for the board to rely upon. The board simply looked at IAGARI and said, hey, we see some coordination between the priority schedulers and the external collision avoidance system. We see there's coordination between the two.  But simply coordinating the two does not mean that the schedule, that box 600 is sensing the medium for each of the first and second output queues. And there's no determination by the board that that limitation is actually satisfied. So in that regard, because that limitation has to be given weight, the board gave it no weight, this panel should vacate that finding, instruct the board, construe that claim, read that limitation into that claim has to be read, and then make an analysis of whether or not IAGARI does, in fact, teach that. We think it does not. Not for this panel to decide if it does or doesn't. Although we think the evidence is sufficient for this panel to conclude that IAGARI doesn't teach it. OK. Thank you, Mr. Battaglia. Thank you, Your Honor. We'll save the rebuttal for the last part. OK. Mr. Stockwell. Thank you, Your Honor. The finding at A29, that the two queues have high and low priority data available at the same time, that is based on the same buffer management statement at IAGARI at that column 13 that we rely upon. So the board recognizes that that statement says, I've got two queues, data ready to go at the same time. In IAGARI's system, there's one transmitter. So there's only one opportunity to transmit. They're contending for the same opportunity. That is the internal collision. That is where IAGARI, we contend, discloses the internal collision. The board's finding at A29 demonstrates there's an internal collision. And indeed, they rely on that to invalidate other claims that IV does not appeal. IAGARI then goes on to make the even if statement that the high priority packet gets that one transmission opportunity, even if the low priority packet goes into back off. And in that regard, I just want to refer the court again to Dr. Tufek's statement, which the board refers to. It's at A3766. It's also relied upon by the board. Dr. Tufek says when he talks about this even if statement from IAGARI, the third statement recites a characteristic. Which page specifically do you have? I'm sorry. A3766 is Dr. Tufek's statement. Paragraph 36? Yes, Your Honor. Paragraph 36. The third statement, like the first two, recites a characteristic of a communication system that prioritized packets that the transmission of a higher priority packet before a lower priority packet sometimes causes the lower priority packet to enter another back off state. And that is why we are contending that the disclosure of an internal collision, where there's only one opportunity to transmit it, and it says it's in packet waiting. And again, if you look at IV's brief, they will admit the only way you get another back off to that superseded packet is it has to flow through the chart. It has to flow through that one opportunity is taken by the high priority packet. It's given a back off. That's why we contend the board's findings show express anticipation here. With respect to the failed transmission attempt argument that counsel made, this is not the basis for the board's decision. There's nowhere in this decision where they say, oh, well, Iagari says that if the channel's busy, that's a failed transmission attempt. And so somehow that means what Iagari is talking about in column 13 doesn't demonstrate anticipation. That is an argument that IV raised below. But it is not an argument that the board relied upon. And the board did not rely upon it for a very good reason. There is a false distinction being raised between what Iagari discloses, where Iagari says, well, if the channel's busy, I'm just going to count that as a failed transmission attempt, just like if maybe there have been other stations or external collisions. And the reason they count that is that goes into an algorithm to determine how much to delay. So they want to have their station, if there's a lot of failed attempts because other people are using the medium, you keep crunching the back off time down so you've got a better shot to get your message across. It's a slightly different algorithm that has nothing to do with the claims. But Iagari's statement about that has nothing to do with what is a failed transmission attempt in the 392 patent. Because the 392 patent acknowledges that if the communication medium is busy, that's not a failed transmission attempt. That's simply the medium was busy. And finally, with respect to the cross appeal, we think the board was correct to rely upon the language in the claim that talks about sensing for sending the message data units. It actually says from message data units, the first and second output cues are required to release those. The sensing opportunity is an opportunity to transmit the message data units. IV has not contested the board's rejection of their arguments below that there had to be a single transceiver or that there had to be multiple schedulers. And in fact, they agree in their reply at page 15 that the limitation does not require two separate or independent sensing operations. They seem to now somehow be suggesting that the sensing operation has to happen at the same time. But that is not a requirement in the claim. And that was not a claim construction they offered below. And this is a system claim. So if it senses for one high priority cue at one time and sends that transmission, and at a later time, it senses for a low priority cue and sends that transmission, the sensing medium limitation is met and the board's holding was appropriate. Thank you. OK. Thank you, Mr. Stackwell. Mr. Babcock, you get the last word on the cross appeal, a minute or so. Thank you, Your Honor. I believe I've used my rebuttal time. I think that was the deal I struck with the panel. So thank you very much, Your Honors. Thank you. Thank you both. The case is taken under submission.